RENDERED: SEPTEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0229-ME

J.S.T.                                                                                    APPELLANT

v.                    APPEAL FROM ALLEN CIRCUIT COURT
                     HONORABLE ASHLEY DOUGLAS, JUDGE
                            ACTION NO. 23-AD-00013

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY
SERVICES; J.C.A.; AND C.G.T., A CHILD                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND KAREM, JUDGES.

EASTON, JUDGE: The Appellant, J.S.T. ("Mother"), appeals from the Allen

Circuit Court's Order terminating her parental rights to her minor child, C.G.T.

(hereafter "Child"). In accordance with *A.C. v. Cabinet for Health and Family*

*Services*, 362 S.W.3d 361 (Ky. App. 2012), counsel for Mother filed an *Anders*[1]

brief alleging there are no non-frivolous grounds for relief, along with a motion to

withdraw as Mother's counsel. Mother did not file a supplemental brief. After a

thorough review, we affirm the Order of the Allen Circuit Court. We also grant

counsel's motion to withdraw via separate order.

## FACTUAL AND PROCEDURAL HISTORY

J.S.T. is the biological mother of Child, who was fifteen years old on

the date of the termination hearing. While there was a previous brief removal and

return of the Child in 2009, the current action began in March 2020 when the

family was referred to the Cabinet for Health and Family Services ("Cabinet") due

to Child's habitual truancy. Child was removed from Mother's care on January 25,

2022. Child has remained in the Cabinet's custody since that time. The father of

the Child did not participate in the underlying termination action, and he has not

appealed the termination of his parental rights.

The Cabinet filed the termination of parental rights ("TPR") petition

on July 27, 2023. The final hearing was held on December 14, 2023.

The Cabinet called several witnesses at the hearing, including the

ongoing case worker from the Cabinet, two guidance counselors from the Allen

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

-2-

County school system, Child's counselor, and Child's foster mother. Mother testified on her own behalf, but she did not call any additional witnesses.

At the termination hearing, the Cabinet case worker testified the petition for Dependency, Neglect, and Abuse ("DNA") was filed in March 2020 by the Allen County school system, alleging educational neglect. Child had an unusually high number of unexcused absences and tardies. Child was also failing several classes. The case was initially a non-removal, and Child remained in the home with Mother. Mother signed a case plan, which included tasks such as completing substance abuse and parenting assessments, maintaining stable housing and employment, establishing a routine surrounding Child's school and education, and having weekly contact with the school guidance counselors to stay updated on Child's educational progress.

After almost two years of no improvement, Mother was requested to submit to a drug screen. After a few "no-shows" for tests, Mother submitted to a hair follicle screen which was positive for methamphetamine. Child was removed from Mother and placed into the custody of the Cabinet on January 25, 2022. She has remained in the same foster home placement since that time. Thereafter, Mother was ordered to submit to random drug screens. While she did have some negative screens, she also had several that were positive for methamphetamine. Mother's most recent positive drug screen was in September 2023.

Testimony was consistent that Child's attendance, grades, and participation in school all improved immensely after entering foster care. There was also testimony that Child is more engaged and social since being removed from Mother's custody. At the time of the hearing, Child was halfway through her sophomore year of high school and was passing all her classes. By all appearances, Child is thriving in her placement. Her foster mother stated Child has expressed a desire to go to college.

Mother testified the pandemic is to blame for Child's low attendance. She stated the internet at their home did not work consistently, so they often were unable to log in for virtual classes. Child struggled with some of her classes, but there was no tutoring available during the pandemic. Mother completed parenting classes, and she claims to have completed the virtual rehabilitation program ARC Anywhere, which she participated in via an app on her phone. Mother testified she is employed, and she is current on her child support obligation.

As for her drug use, Mother stated she has not used methamphetamine since June 2022. She claims the positive results since then were false positives, and she alleges she made a complaint about the drug testing facilities to the Attorney General's Office. While she was using, Mother testified she never used while Child was in the home.

The circuit court entered its Findings of Fact and Conclusions of Law, and Order Terminating Parental Rights on January 24, 2024. The circuit court found the requirements of KRS[2] 625.090 had been met in order to terminate Mother's parental rights. Mother now appeals these orders.

## STANDARD OF REVIEW

This Court's standard of review of a termination of parental rights case is the clearly erroneous standard in CR[3] 52.01. The factual findings must be supported by clear and convincing evidence. *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008). The findings of the trial court should not be disturbed unless there exists no substantial evidence in the record to support its findings. *V.S. v. Commonwealth, Cabinet for Human Services*, 706 S.W.2d 420, 424 (Ky. App. 1986). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004).

## ANALYSIS

Pursuant to the guidance provided in *A.C. v. Cabinet for Health &*

---

[2] Kentucky Revised Statutes.

[3] Kentucky Rules of Civil Procedure.

-5-

*Family Services*, *supra* at 371, "this Court will fully examine the record and decide whether the appeal is wholly frivolous pursuant to *Anders* . . . ."

KRS 625.090 is the controlling statute regarding the involuntary termination of parental rights. This statute allows parental rights to be involuntarily terminated only upon findings, based on clear and convincing evidence, that (1) the child has been found to be an abused or neglected child as defined in KRS 600.020(1) by a court of competent jurisdiction; (2) that the Cabinet has filed a petition seeking the termination of parental rights pursuant to KRS 620.180 or KRS 625.050; (3) that termination is in the child's best interests; and (4) at least one of the grounds set out in KRS 625.090(2)(a)-(k) is present.

KRS 600.020 outlines what constitutes an "abused or neglected child." Child was adjudged to be an abused or neglected child at the adjudication hearing that took place on January 26, 2021. The disposition order was subsequently entered on February 25, 2021. The time to appeal the finding of abuse or neglect was immediately after the entry of the disposition order. Any appeal to this finding is untimely.

Furthermore, we determine there was substantial evidence to support a finding of abuse or neglect from the evidence presented at the TPR hearing. Specifically, under KRS 600.020(1), "an 'abused or neglected child' means a child whose health or welfare is harmed or threatened with harm when: (a) his or her

-6-

parent . . . (3) engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child, including but not limited to parental incapacity due to a substance use disorder . . . ; (8) does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being . . . ."

Next, the court must find that at least one of the grounds outlined in KRS 625.090(2) is present. The grounds relevant to this action include:

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights.

The family court found these factors applied in this case. Factor (j) is

-7-

undisputed. Only one finding is required under KRS 625.090(2), so it is unnecessary for any further analysis. However, for the sake of being thorough, we do agree with the circuit court that there existed substantial evidence for a finding under factors (e) and (g). Specifically, under subsection (g), Mother continuously failed to provide the necessary education to Child. Mother was given almost two years to improve Child's school attendance and to monitor Child's progress. Rather than improving during that period, Child's situation instead worsened. Part of Mother's case plan was to obtain weekly updates on Child's progress. The school counselor testified Mother sent about four or five emails requesting information, while a school semester has approximately eighteen weeks.

Additionally, despite Mother's protests to the contrary, Mother tested positive for methamphetamine throughout the course of her case plan, and she refused to go to in-patient treatment. Mother has shown no evidence that there is any hope for improvement in the future.

The final consideration is the "best interest" standard. In determining the best interest of a child and the existence of a ground for termination, the family court must consider the factors in KRS 625.090(3), which are:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical

or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

The circuit court found it was in the best interests of Child to terminate Mother's rights. We do not believe the court's conclusion was clearly erroneous. The court determined the Cabinet had rendered or attempted to render all reasonable services to Mother, but those services were not utilized. Mother did pay child support, visit with Child regularly, and did complete parenting classes.

However, the circuit court ruled this did not outweigh her substance abuse disorder and refusal to seek meaningful treatment for it.

While the case began due to educational neglect, Mother's drug abuse was the main factor preventing Child from being returned to her custody. It is extremely likely that Mother's drug abuse was the cause of Child's truancy, or at least a primary cause. At the hearing, Mother refused to take any responsibility for Child missing school, instead blaming the pandemic. However, Mother was unable to explain the timing discrepancy of that story. The DNA petition was filed on March 9, 2020. The Kentucky Governor declared a state of emergency on March 6, 2020,[4] which occurred prior to schools being closed. As of the filing of the DNA petition, Child had 16 unexcused absences for that school year. Mother had almost two years to improve Child's school attendance, yet she did not do so.

All testimony indicates Child is thriving in her current foster home. She is consistent with school attendance and tutoring, and she is passing all her classes. Child's counselor and foster mother testified Child does not wish to be returned to Mother's custody, although she does wish to maintain a relationship with her.

---

[4] Kentucky's Response to COVID-19: https://governor.ky.gov/Documents/20201020_COVID-19_page-archive.pdf.

"[An] appellate court is obligated to give a great deal of deference to the [circuit] court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014). The circuit court did not abuse its discretion, as all statutory requirements for termination had been met.

**CONCLUSION**

The findings of the circuit court pursuant to KRS 625.090 are not clearly erroneous, and it did not abuse its discretion. For the foregoing reasons, the order of the Allen Circuit Court terminating Mother's parental rights to Child is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Bruce B. Brown
Glasgow, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Dilissa G. Milburn
Mayfield, Kentucky